UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ERWIN, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 6513 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

John Erwin brought this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of State to turn over additional documents in response to his FOIA request. The State Department has moved for summary judgment. Doc. 33. The motion is denied.

**Background**

Along with its summary judgment motion, the Department filed and served a Local Rule 56.1(a)(3) statement of facts and a Local Rule 56.2 notice to pro se litigants. Docs. 35, 36. Although Erwin filed a brief opposing summary judgment, Doc. 46, he did not file a Local Rule 56.1(b)(3)(B) response to the Department's Local Rule 56.1(a)(3) statement. Accordingly, the facts set forth in the Department's statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) (citing Local Rule 56.1(b)(3)(C)) ("In accordance with a local rule, the district court

1

justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108-09 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).

Erwin was a Foreign Service Officer with the State Department from January 2002 to September 2003. Doc. 35 at ¶ 1. The facts regarding his separation from the Department are unclear. Attached to the Department's reply brief is an affidavit from Jason Mehta, a State Department attorney, regarding the separation. Doc. 48-1. Because the affidavit is not referenced in any Local Rule 56.1 statement, it will be ignored. *See Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"). And because Erwin did not file either a Local Rule 56.1(b)(3)(B) response or a Local Rule 56.1(b)(3)(C) statement of additional facts, the facts set forth in his submissions will be ignored as well. *See Midwest Imps.*, 71 F.3d at 1317; *Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *1 n.1 (N.D. Ill. June 13, 2011) ("the Court disregards any

additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)[] statement of additional facts"); *Curtis v. Wilks*, 704 F. Supp. 2d 771, 789 (N.D. Ill. 2010) ("Any facts plaintiffs assert in their response brief that were not included in their LR 56.1 submissions will not be considered."). An opinion issued in *Erwin v. Holden*, 06 C 5695 (N.D. Ill. filed Oct. 20, 2006), a factually related case that Erwin brought against Erin Patricia Anna, Laura Holden, and the United States, provides some background:

> Soon after Erwin began his [State Department] training in January 2002, he became engaged to marry Anna, a fellow trainee. Their engagement was brief and did not end amicably. Erwin alleges that in the spring of 2002, after the relationship was over, Anna's superiors directed her not to attend social events at which Erwin would be present. He further alleges that she attended a party at his home in spite of these orders and that after she refused to leave, he had to have her removed from the premises. He states that as a result, Anna initiated a complaint against him with the [Department]. Erwin alleges that Anna related to the [Department] that Holden had accused Erwin of sexual assault when the two were in the Peace Corps, where Erwin served from 1996 to 1998.
>
> Soon after, [the State Department Bureau of] Diplomatic Security began an investigation of Erwin to review his top-secret clearance. Erwin alleges that the [Department's] investigation was based directly on the allegation of sexual assault that Anna had related to her superiors. As part of the investigation, in July 2002, the [Department] directed Dr. [Kenneth] Dekleva, a [Department] psychiatrist, to evaluate Erwin. Erwin subsequently lost his high-level medical clearance, and as a result, he could not receive an overseas appointment as he wished. He soon left the [Department] altogether.

*Erwin v. Holden*, 2007 WL 3334333, *1 (N.D. Ill. Nov. 7, 2007).

On March 9, 2009, Erwin submitted a FOIA request to the Department seeking: "my employment records, including but not limited to: records relating to my background check, any investigations of me performed by the [Department], and information located in the Office of Diplomatic Security." Doc. 35 at ¶ 2; Doc. 35-4 at 1-2. The request focuses on "one specific

3

piece of information," namely, "who made the allegation of sexual assault" and any other "circumstantial evidence surrounding this allegation." Doc. 35-4 at 1-2. Because the request concerned Erwin's own records, the Department notified Erwin that it would be conducted in accordance with the Privacy Act, 5 U.S.C. § 552a. Doc. 35-1 at ¶ 6; Doc. 35-4 at 3-4. Erwin subsequently submitted seven other FOIA requests, Doc. 35 at ¶ 5, but only the initial March 2009 request is at issue in this case, Doc. 31 at 1-2; Doc. 32; Doc. 38 at 5-6.

After receiving Erwin's request, the Department's Office of Information Programs and Services ("IPS"), the component responsible for responding to FOIA requests, Doc. 35 at ¶ 3, determined that the components most likely to have responsive documents were the Bureau of Diplomatic Security, the Bureau of Human Resources, and the Office of Medical Services. *Id.* at ¶ 7. The Department ultimately located 151 responsive documents. *Id.* at ¶ 10. From February 10, 2011, to February 12, 2012, the Department produced 89 documents in full (including Erwin's entire personnel, medical, and original security background files) and 43 documents in part, withheld 18 documents in full, and sent one document to the Department of Justice for direct reply to Erwin. *Id.* at ¶¶ 10-11. The Department then notified Erwin that it had completed processing his FOIA request. *Id.* at ¶ 15.

On September 16, 2011, while the Department was still producing documents, Erwin filed this suit to compel it to promptly turn over any responsive and non-exempt documents. Doc. 1 at ¶¶ 14, 17-19. Erwin's allegations of undue delay were mooted by the Department's February 2012 letter stating that it had produced all the documents it was going to produce. Doc. 35-5 at 5-10; *see Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 675 (7th Cir. 2009); *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536-37 (7th Cir. 2005).

4

The Department's summary judgment motion contends that its production complies with applicable law. To support its motion, the Department submits an affidavit from Sheryl Walter, the IPS Director, describing the search for responsive documents. Doc. 35-1 at ¶¶ 25-52. The affidavit also contains a *Vaughn* index, Docs. 35-2, 35-3, which "is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable," *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 n.3 (7th Cir. 1998) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974)).

## Discussion

"FOIA requires a federal agency upon request to disclose records in its possession, subject to nine exemptions." *Enviro Tech Int'l v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004); *see* 5 U.S.C. § 552(a)-(b). The Privacy Act generally "provides an individual with the right to access his records upon request," also subject to certain exemptions. *Bassiouni v. FBI*, 436 F.3d 712, 714-15 (7th Cir. 2006); *see* 5 U.S.C. § 552a(d)(1), (j)-(k). Because of the "asymmetrical distribution of knowledge" in FOIA and Privacy Act cases, "where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (internal quotation marks omitted), the agency bears the burden of establishing that the search was adequate and that the asserted exemptions are proper. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009); *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Patterson v. IRS*, 56 F.3d 832, 835-36, 840 (7th Cir. 1995).

The Department argues that its search for documents was adequate, Doc. 34 at 7-8, and that the documents withheld in whole or in part are subject to Privacy Act and FOIA exemptions, *id.* at 8-13; Doc. 48 at 7 n.2. Erwin responds that the *Vaughn* index does not provide enough

5

detail to determine whether the exemptions were properly invoked. Doc. 38 at 6-7, 9, 12. He also argues that the search must have been inadequate because the allegation of criminal conduct is not mentioned in the documents the Department did produce. *Id.* at 13-14.

When evaluating the adequacy of the Department's search, "[t]he issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate." *Becker v. IRS*, 34 F.3d 398, 406 (7th Cir. 1994) (internal quotation marks omitted); *see also Morley*, 508 F.3d at 1120 ("failure of an agency to turn up one specific document in its search does not alone render a search inadequate") (internal quotation marks omitted). "The adequacy of the document search is judged under a reasonableness standard. The agency may rely on reasonably detailed nonconclusory affidavits submitted in good faith to support their claims of compliance." *Becker*, 34 F.3d at 406 (internal quotation marks omitted); *see also Patterson*, 56 F.3d at 840-41. "A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Chambers*, 568 F.3d at 1003; *Morley*, 508 F.3d at 1122 (finding an affidavit inadequate for not "identify[ing] the terms searched or explain[ing] how the search was conducted in each component" and not providing "any indication of what each directorate's search specifically yielded") (internal quotation marks omitted, alterations in original).

Walter avers that IPS determined that the Department components most likely to have responsive documents were the Bureau of Diplomatic Security, the Bureau of Human Resources, and the Office of Medical Services. Doc. 35 at ¶ 7; Doc. 35-1 at ¶ 27. Diplomatic Security is responsible for conducting personnel security clearance investigations and administrative and

6

criminal investigations relating to alleged misconduct, Doc. 35 at ¶ 8; Human Resources is responsible for hiring, developing, assigning, and supporting Department employees, *ibid*.; and Medical Services is responsible for providing medical support to Foreign Service employees, Doc. 35-1 at ¶ 47.  Because Erwin had requested employment records relating to any background check or investigation conducted of him, Doc. 35-4 at 1-2, it was reasonable for the Department to limit the search to those components.  Erwin does not suggest otherwise.

Walter's affidavit describes the search that Diplomatic Security, Human Resources, and Medical Services conducted.  In Human Resources, six sub-components were searched.  The Executive Office was searched for Erwin's Employee Profile and his Official Personnel Folder; the Grievance Office was searched for copies of any grievance cases brought before the Foreign Service Grievance Board; the Office of Employee Relations was searched using paper and electronic sources for information regarding conduct, suitability, and discipline; the Performance and Evaluation Office was searched electronically for Erwin's "scorecard," which tracks promotions, test scores, and other achievements; the Career Development and Assignments Office was searched using paper and electronic sources for documents relating to counseling and assignments; and the Travel Office was searched using paper sources for travel orders and "Change of Station" orders.  Doc. 35-1 at ¶¶ 36-46.  Human Resources released Erwin's entire personnel file, consisting of 108 documents, and withheld nothing.  *Id.* at ¶ 37.  In Medical Services, an official with knowledge of the Electronic Medical Record ("eMED") database searched for responsive medical records using Erwin's first and last names as well as other biographical information.  *Id.* at ¶¶ 50-52.  All responsive eMED documents were produced to

Erwin, as was his entire medical record. *Id.* at ¶¶ 49, 52. Walters adequately described the searches conducted within Human Resources and Medical Services.

The same cannot be said for Walter's description of the search conducted within Diplomatic Security. Her affidavit states that four sub-components of Diplomatic Security were searched: the Office of Personnel Security and Suitability, which manages the Department's personnel security clearance program; the Office of Professional Responsibility, which conducts administrative and criminal investigations related to alleged misconduct and security clearance eligibility; the Counterintelligence Division, which detects, deters, and neutralizes the efforts of foreign intelligence services; and the Office of Protective Intelligence Investigations, which directs, coordinates, and conducts investigations concerning threat activity, suspicious events, and actual incidents involving Diplomatic Security-designated protectees and facilities. Doc. 35-1 at ¶¶ 31-35. But the affidavit fails to describe with any level of specificity what searches were conducted within those components and which documents were found. For example, all that the affidavit reveals about the search of the Office of Professional Responsibility—the sub-component that may be most likely to have the documents Erwin seeks—is that "[d]ocuments concerning [Erwin] were located in this component as there was an investigation conducted on Mr. Erwin when he was employed with the Department." *Id.* at ¶ 33. Walter's averment that documents concerning Erwin "were located in this component" does not say that *all* documents in the component concerning Erwin were located and, without some description of how the search was conducted, the affidavit does not establish that the search was sufficiently thorough. It follows that this portion of the affidavit "lacks the detail necessary to afford [Erwin] an opportunity to challenge the adequacy of the search and to allow the district court to determine if

8

the search was adequate in order to grant summary judgment." *Morley*, 508 F.3d at 1122 (denying summary judgment where the affidavit "provide[d] no information about the search strategies of the components charged with responding to [the] FOIA request" and did not "identify the terms searched or explain how the search was conducted" in each component) (internal quotation marks and alterations omitted); *see also Oglesby*, 920 F.2d at 68 ("Because State's affidavit did not adequately describe the agency's search, summary judgment on the adequacy of the search was improper."); *Wickwire Gavin, P.C. v. Def. Intelligence Agency*, 330 F. Supp. 2d 592, 598 (E.D. Va. 2004) (denying summary judgment where the agency's affidavit failed "to detail who conducted the search, which file 'systems' were searched, the search terms used, or how long the searches took to perform"); *Maydak v. U.S. Dep't of Justice,* 254 F. Supp. 2d 23, 39 (D.D.C. 2003) (denying summary judgment where the agency's affidavit failed to "aver that it identified and searched all files reasonably likely to contain records responsive to each of plaintiff's varied requests").

Because the Walter affidavit does not establish the adequacy of the Department's search for responsive documents, the Department's summary judgment motion is denied. If the Department again seeks summary judgment, it first must supplement the search affidavit to provide the specificity that now is missing; or, if it concludes that the search of Diplomatic Security was inadequate, it must conduct a new search. Given the possibility that additional documents may be discovered, the court will not presently rule on the validity of the exemptions asserted by the Department. *See Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) ("[E]ven if the protected records could be withheld under one of the FOIA exemptions, *that does not absolve the [agency] of its duty to identify responsive documents*, claim the relevant

exemptions …, and explain its reasoning for withholding the documents in its affidavit.") (quoting *Morley*, 508 F.3d at 1120). That said, the Department should take account of the following observations should it again seek summary judgment.

The following framework governs analysis of whether an agency has properly withheld documents under FOIA:

> "[D]isclosure, not secrecy, is the dominant objective" of the FOIA. *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Because of this, our obligation is "to construe FOIA exemptions narrowly in favor of disclosure." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989); *Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992). The government agency bears the burden of justifying its decision to withhold the requested information. 5 U.S.C. § 552(a)(4)(B); *Becker v. IRS*, 34 F.3d 398, 402 (7th Cir. 1994). "A district court may grant summary judgment to the government in a FOIA case only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) (quoting *King v. United States Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987)). Since "[b]oth the court and the requester must look to the affidavits for an explanation of the agency's decision to withhold information … an affidavit that contains merely a 'categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'" *Id.*

*Patterson*, 56 F.3d at 835-36; *see also Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). The same framework governs exemptions claimed under the Privacy Act. *See Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991) (analyzing the applicability of Privacy Act exemptions utilizing the framework developed for FOIA claims); *Terkel v. Kelly*, 599 F.2d 214, 217-18 (7th Cir. 1979) (analyzing whether the agency sufficiently explained its assertion of Privacy Act and FOIA exemptions without distinguishing between the two statutes).

10

The Department's *Vaughn* index appears to have two flaws. First, it repeatedly invokes FOIA Exemption 7, which allows an agency to withhold certain "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), to justify withholding documents concerning an "investigation" of Erwin. Precedent clearly holds, however, that not all agency investigations of employees are conducted for law enforcement purposes. *See Patterson*, 56 F.3d at 837 ("An agency's investigation of its own employees is for law enforcement purposes only if it focuses directly on specifically alleged illegal acts, acts which could, if proved, result in civil or criminal sanctions.") (internal quotation marks and brackets omitted). Yet the *Vaughn* index does not establish that the Department's investigation of Erwin was for law enforcement purposes.

For example, the *Vaughn* index simply states that Document 045 "is a Report of Investigation conducted by the Office of Professional Responsibility and prepared by an agent of the Bureau of Diplomatic Security." Doc. 35-2 at ¶¶ 81-82. Without further explanation, the court cannot conclude that the investigation was for law enforcement purposes. *See Patterson*, 56 F.3d at 837 (holding that an affidavit did not justify invocation of Exemption 7(C) where it failed "to elaborate on the underlying offense [or] even to recite the statutes pursuant to which the investigation was undertaken") (internal quotations and alternations omitted). Erwin failed to make this particular argument, but there is no forfeiture because the Department has the burden of proving that it is entitled to the exemption. *See id*. at 837 n.6.

Second, the Department has failed to establish that the documents withheld in their entirety do not contain non-exempt portions, which must be disclosed. (Again, Erwin's failure to raise this specific point is not a forfeiture because the Department bears the burden of justifying

11

its withholding of documents and the court may *sua sponte* consider segregability. *See Elliot*, 596 F.3d at 851.) An agency must provide any "reasonably segregable portion of a record … after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9). "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

The Department has not satisfied its burden. Documents P071 and P072, which are 140- and 166-page National Comprehensive Reports, are illustrative. The Department attempted to justify withholding those documents in full on the ground that "[m]uch of the material throughout consists of information on other people," which implicates the privacy exemptions, *see* 5 U.S.C. § 552(b)(6), (7)(C), and on the ground that "several portions of withheld material discuss law enforcement techniques and strategies," which implicates the law enforcement technique exemption, *see id.* § 552(b)(7)(E). Doc. 35-3 at ¶¶ 184-87. The Department does not explain with any degree of specificity, however, why it could not protect the privacy of third parties and the need to avoid disclosure of law enforcement techniques through redacting those lengthy documents as opposed to entirely withholding them. The Department offers only the boilerplate assertion that "[a]ll of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and it has been determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law." Doc. 35-3 at ¶ 199. That explanation is insufficient. *See Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728,

734 (D.C. Cir. 2008) (holding an affidavit insufficient where it conclusorily stated that an official "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act"); *Patterson*, 56 F.3d at 840 (holding an affidavit insufficient where it "did not even offer the type of 'general conclusion' about the segregability of the exempt information which was rejected as inadequate in *Church of Scientology Int'l v. United States Dep't of Justice,* 30 F.3d 224, 231 (1st Cir. 1994)").

## Conclusion

Because the Department has not established for purposes of summary judgment that its search for responsive documents was adequate, its summary judgment motion is denied. However, the court will not at this juncture order the Department to turn over documents or to identify Erwin's accuser. There are substantial obstacles to the disclosure of that information. Under FOIA Exemptions 6 and 7(C), "personal identifying information is regularly exempt from disclosure. And that is as it should be, for the core purpose of the FOIA is to expose what the government is doing, not what its private citizens are up to." *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th Cir. 2003); *see also id.* at 1125 ("The Supreme Court has repeatedly held that the only public interest that is relevant to [balancing individual privacy interests against the public interest in disclosure] is the shining of a light on an agency's performance of its statutory duties.") (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)); *Becker*, 34 F.3d at 404 ("The only public interest a court need examine in the balancing process [for Exemption 7(C)] is whether disclosure would contribute 'significantly to public understanding of the operations or activities of the government.'") (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)) (some internal quotation marks

13

omitted); *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 208 (7th Cir. 1985) ("The record fails to reflect any benefit which would accrue to the public from disclosure of this document and Kimberlin's self-serving assertions of government wrongdoing and coverup do not rise to the level of justifying disclosure."). Likewise, the Privacy Act exempts from disclosure investigatory material compiled for law enforcement purposes, or for purposes of determining suitability for federal employment, if doing so would identify confidential sources. 5 U.S.C. § 552a(k)(2), (5).

If the Department wishes to again seek summary judgment, it should fill the above-referenced gaps in its search affidavit and *Vaughn* index. Any renewed motion should be filed by April 3, 2013.

March 6, 2013

United States District Judge