UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ERWIN, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 6513 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

### M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>

John Erwin brought this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of State to turn over documents in response to his FOIA request. The Department filed a summary judgment motion, Doc. 33, which was denied, 2013 WL 842601 (N.D. Ill. Mar. 6, 2013). Now before the court are the Department's renewed summary judgment motion and Erwin's cross-motion for summary judgment. Docs. 73, 86. The Department's motion is granted and Erwin's motion is denied.

### Background

The relevant background is set forth in the court's earlier opinion. 2013 WL 842601, at *1-3. By way of review, the Department located 151 documents responsive to Erwin's request. Doc. 83 at p. 5, ¶ 10. Of those documents, 89 were released in full (including Erwin's entire personnel, medical, and original security background files), 43 were withheld in part, and 17 were originally withheld in full; portions of six of the 17 documents originally withheld in full will be produced to Erwin as a result of the review the Department conducted after its first summary judgment motion was denied. *Ibid.*

1

The court denied the Department's summary judgment motion because the search affidavit prepared by Office of Information Programs and Services ("IPS") Director Sheryl Walter lacked sufficient detail regarding the search conducted within the Department's Bureau of Diplomatic Security. 2013 WL 842601, at *4-5. Additionally, while not ruling on the validity of the Department's asserted exemptions, the court pointed out two flaws in the Department's *Vaughn* index. *Id*. at *5-6. The court invited the Department to file a renewed summary judgment motion, provided that it "fill the … gaps in its search affidavit and *Vaughn* index." *Ibid*.

On the Department's renewed motion, Erwin's Local Rule 56.1(b)(3)(B) response (Doc. 83 at pp. 2-7) takes issue with some assertions in the Department's Local Rule 56.1(a)(3) statement (Doc. 75). However, most of Erwin's objections fail to cite specific record material (Doc. 83 at p. 7, ¶ 15), concern matters immaterial to the cross-motions for summary judgment (*id*. at p. 2, ¶ 14), or present argument inappropriate for a Local Rule 56.1 submission (*id*. at pp. 5-7, ¶¶ 9, 11, 13-14). *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial. Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are accordingly, inappropriate. A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity."); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) ("the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses") (citation

omitted). Erwin's Local Rule 56.1(b)(3)(C) statement of additional facts (Doc. 83 at pp. 7-13) is disregarded for the same reasons, as its assertions address matters immaterial to this FOIA case, like Erwin's proceedings before the Foreign Service Grievance Board (*id*. at pp. 8-10, ¶¶ 3-4), fail to make specific references to the record (*id*. at pp. 7-8, ¶ 2), or present legal argument inappropriate for a Local Rule 56.1 submission (*id*. at pp. 7-8, 10-13, ¶¶ 1-2, 5-7).

Erwin asks the court to conduct an *in camera* review if the withheld materials. Doc. 86 at 11-14. Precedent holds that a district court may "deny[] *in camera* review of records when affidavits submitted by the Government (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith." *Silets v. Dep't of Justice*, 945 F.2d 227, 229 (7th Cir. 1991) (en banc) (internal quotation marks omitted). As shown below in the Discussion section, the Department has satisfied the first two requirements. The court here will consider Erwin's argument, relevant to the third requirement, that the Department engaged in bad faith in responding to his FOIA request. Doc. 88 at pp. 11-13, ¶ 7.

Erwin's argument is that the Department produced too *many* documents—in particular, documents other than those that concern the identity of the person who accused him of sexual assault. *Ibid*.; Doc. 86 at 5-7. Erwin provides no legal authority for the proposition that over-production qualifies as bad faith for purposes of obtaining *in camera* review in a FOIA case. In any event, the Department did not over-produce. Although the FOIA request states at one point that Erwin was "looking for one specific piece of information, … namely, who made the allegation of sexual assault," it also states that he was "requesting, in short, my employment records, including but not limited to: records regarding my background check, any investigations

3

of me performed by the DOS, and any information located in the Office of Diplomatic Security." Doc. 35-4 at 1-2. Thus, Erwin's FOIA request plainly requests more than just documents concerning the identity of the person who accused him of sexual assault. For these reasons, and even taking into account the factual assertions in his Local Rule 56.1 submissions regarding the Department's alleged bad faith, Erwin has failed to establish that an *in camera* review is warranted due to bad faith on the Department's part. *See Silets*, 945 F.2d at 231 ("[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions.") (internal quotation marks omitted, alterations in original).

Given all this, and because Erwin's Local Rule 56.1 submissions and legal briefs do not undermine any of the factual averments set forth in the Department's affidavit and *Vaughn* index, the disposition of the cross-motions for summary judgment turns on the supplemental affidavit and *Vaughn* index attached to the Department's renewed motion and on the parties' legal arguments. *See ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) ("If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."); *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden [on summary judgment]."); *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) ("In the summary judgment posture … the question is whether the agency conducted a search

4

reasonably calculated to uncover all relevant documents in response to the FOIA request …. The agency may rely on reasonably detailed nonconclusory affidavits submitted in good faith to support their claims of compliance."); *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (affirming summary judgment for the agency where "[t]he [agency] affidavit describes the requested documents and the justifications for nondisclosure with reasonable specificity, the withheld information logically falls within the exemptions, and there is no evidence contrary to the affidavits or of bad faith by the [agency]").

## Discussion

"FOIA requires a federal agency upon request to disclose records in its possession, subject to nine exemptions." *Enviro Tech Int'l v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004); *see* 5 U.S.C. § 552(a)-(b). The Privacy Act generally "provides an individual with the right to access his records upon request," also subject to certain exemptions. *Bassiouni v. FBI*, 436 F.3d 712, 714-15 (7th Cir. 2006); *see* 5 U.S.C. § 552a(d)(1), (j)-(k). Because of the "asymmetrical distribution of knowledge" in FOIA and Privacy Act cases, "where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (internal quotation marks omitted), the agency bears the burden of establishing that the search was adequate and that the asserted exemptions are proper. *See Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009); *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Patterson v. IRS*, 56 F.3d 832, 835-36, 840 (7th Cir. 1995).

I. **The Adequacy of the Department's Search for Documents in the Bureau of Diplomatic Security**

When evaluating the adequacy of the Department's search, "[t]he issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate." *Becker v. IRS*, 34 F.3d 398, 406 (7th Cir. 1994) (internal quotation marks omitted);

*see also Morley*, 508 F.3d at 1120 ("failure of an agency to turn up one specific document in its search does not alone render a search inadequate") (internal quotation marks omitted). "The adequacy of the document search is judged under a reasonableness standard. The agency may rely on reasonably detailed nonconclusory affidavits submitted in good faith to support their claims of compliance." *Becker*, 34 F.3d at 406 (internal quotation marks omitted); *see also Patterson*, 56 F.3d at 840-41. "A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (citing *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Chambers*, 568 F.3d at 1003; *Morley*, 508 F.3d at 1122 (finding an affidavit inadequate for not "identify[ing] the terms searched or explain[ing] how the search was conducted in each component" and not providing "any indication of what each directorate's search specifically yielded") (internal quotation marks omitted, alterations in original).

In holding that Walter's first attempt to explain the Department's search was insufficient, the court explained that while "Walter adequately described the searches conducted within [the Department's Bureau of] Human Resources and Medical Services," "[t]he same cannot be said for Walter's description of the search conducted within [the Bureau of] Diplomatic Security." *Id*. at *4. In particular, the court faulted the affidavit for "fail[ing] to describe with any level of specificity what searches were conducted within [Diplomatic Security's] components and which documents were found." *Ibid*. Accompanying the Department's renewed summary judgment motion is a supplemental affidavit from Walter. Docs. 74-1, 74-2. The supplemental affidavit adequately describes the searches conducted within Diplomatic Security.

First, the supplemental affidavit identifies the four components of Diplomatic Security that were reasonably likely to have responsive documents: the Office of Personnel Security and

6

Suitability ("PSS"); the Special Investigations Division ("SID"), formerly known as the Office of Professional Responsibility; the Counterintelligence Division ("CD"); and the Office of Protective Intelligence Investigation ("OPII"). Doc. 74-1 at ¶ 7. The supplemental affidavit then details how each component was searched and which, if any, responsive documents were found in each component. PSS, which maintains paper files, was searched using an electronic database for responsive documents matching Erwin's name, and the search retrieved Erwin's original security background file from when he applied for a security clearance and while he was employed with the Department. *Id*. at ¶¶ 8-10. SID, which maintains both paper and electronic records, was searched using an electronic database searchable by name or other biographical information, and the search retrieved one file under Erwin's name related to an investigation conducted when he was employed with the Department. *Id*. at ¶¶ 11-13. CD, which maintains both paper and electronic records, was searched using an electronic database searchable by name or other biographical information, and the search did not locate any records responsive to Erwin's request. *Id*. at ¶¶ 14-16. OPII, which maintains both paper and electronic records, was searched using an electronic database searchable by name or other biographical information, and the search retrieved two case files under Erwin's name related to investigations conducted by OPII of Erwin pertaining to allegations of harassment, stalking, and threats after he left the Department. *Id*. at ¶¶ 17-19.

      Walter's supplemental affidavit provides the specificity missing from her initial affidavit. The supplemental affidavit clearly delineates how the Department conducted its search within Diplomatic Security and which responsive documents were located in each component. The Department accordingly has established the adequacy of its search for responsive documents

7

within that bureau. *See Morley*, 508 F.3d at 1120; *Patterson*, 56 F.3d at 840-41; *Becker*, 34 F.3d at 406; *Maynard*, 986 F.2d at 559.

II. **The Adequacy of the Department's Supplemental *Vaughn* Index and the Validity of Its Claimed Exemptions**

With respect to the *Vaughn* index submitted with the Department's first summary judgment motion, the court wrote as follows:

> The Department's *Vaughn* index appears to have two flaws. First, it repeatedly invokes FOIA Exemption 7, which allows an agency to withhold certain "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), to justify withholding documents concerning an "investigation" of Erwin. Precedent clearly holds, however, that not all agency investigations of employees are conducted for law enforcement purposes. *See Patterson*, 56 F.3d at 837 ("An agency's investigation of its own employees is for law enforcement purposes only if it focuses directly on specifically alleged illegal acts, acts which could, if proved, result in civil or criminal sanctions.") (internal quotation marks and brackets omitted). Yet the *Vaughn* index does not establish that the Department's investigation of Erwin was for law enforcement purposes.…
>
> Second, the Department has failed to establish that the documents withheld in their entirety do not contain non-exempt portions, which must be disclosed. … An agency must provide any "reasonably segregable portion of a record … after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9). "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

2013 WL 842601, at *6. The *Vaughn* index (Docs. 74-1 & 74-2 at ¶¶ 33-90) included in Walter's supplemental affidavit remedies both flaws, and the affidavit itself (Doc. 74-1 at ¶¶ 20-32) otherwise adequately supports the Department's claimed exemptions.

Before addressing the Exemption 7 and segregability issues, the court notes that the Department argues that some of the withheld documents are protected from disclosure by Exemption 6 and certain provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2), (k)(5). Doc. 74 at 9-10, 13; Doc. 74-1 at ¶¶ 23-25, 30-32, 34-40, 42, 44-53; Doc. 74-2 at ¶¶ 53-90. Erwin's

response brief (Doc. 86) and Local Rule 56.1(b)(3) materials (Doc. 83) do not substantively address or even mention Exemption 6 or the claimed Privacy Act exemptions. It follows that Erwin has forfeited any argument that the Department's invocations of Exemption 6 and the Privacy Act are improper. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to Cracker Barrel's motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008).

### A.     Exemption 7

Exemption 7 states in pertinent part that an agency may withhold certain "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source …, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions …, or (F) could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7). The Department invokes Exemptions 7(C), (D), (E), and (F) to justify its withholding of certain documents. Doc. 74 at 11-13; Doc. 74-1 at ¶¶ 23-29, 34-39, 44-47, 49-53; Doc. 74-2 at ¶¶ 53-90. In response, Erwin argues only that those documents are "non-law enforcement … documents," a reference to Exemption 7's *general* requirement that documents may be withheld thereunder only if they were "compiled for law enforcement purposes." Doc. 86 at 3. Erwin does not mention the *specific* requirements of subsections (C), (D), (E), and (F), let alone maintain that the withheld

9

documents do not satisfy those requirements, thereby forfeiting any such argument. *See Milligan*, 686 F.3d at 386; *Alioto*, 651 F.3d at 721; *Humphries*, 474 F.3d at 407-08.

In contrast to her initial affidavit, which did not show that the Department's investigations of Erwin were for law enforcement purposes, 2013 WL 842601 at *6, Walter's supplemental affidavit describes how the investigations were undertaken as part of the Bureau of Diplomatic Security's law enforcement duties. Walter avers that Diplomatic Security "is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy" and serves as "the law enforcement arm of the Department." Doc. 74-1 at ¶ 21. With respect to the responsive documents located within that bureau, Walter states:

> DS located four responsive investigative files that pertain to: (1) a security background investigation of Plaintiff conducted by PSS to determine suitability for employment, (2) another employment-related investigation conducted by SID regarding Plaintiff's suitability to maintain a security clearance, and (3) two post-employment investigations involving Plaintiff and a Department employee conducted by [OPII] under DS's law enforcement mission to provide a safe and secure environment for the conduct of U.S. foreign policy. … PSS conducted a security background investigation [on Erwin] pursuant to 5 U.S.C. § 7301 *et seq.* (Suitability, Security, and Conduct); SID conducted a misconduct investigation [of Erwin] into allegations of sexual harassment pursuant to 5 U.S.C. § 7301 *et seq.*; and [OPII] conducted two investigations of Plaintiff based upon allegations of conduct that appear to be prohibited by the following statutes: 18 U.S.C. § 111 (Forcible Assault on a U.S. Official), 18 U.S.C. § 115 (Threats to U.S. Officials), 18 U.S.C. § 1114 (Protection of U.S. Officers and Employees), and 18 U.S.C. § 875 (Interstate Communications); and 47 U.S.C. § 223 (Obscene or Harassing Phone Calls).

*Id.* at ¶ 22. The two OPII investigations referenced at the end of the above-quoted passage "related to investigations [that OPII] conducted of Plaintiff pertaining to allegations of harassment, stalking and threats after he left the Department." *Id.* at ¶ 19.

The updated *Vaughn* index identifies each document or portion withheld under Exemption 7, and describes in detail how Exemption 7, often in conjunction with other FOIA or

10

Privacy Act exemptions, justifies non-disclosure. *Id*. at ¶¶ 34-39, 44-47, 49-53; Doc. 74-2 at ¶¶ 53-90. For example, the updated *Vaughn* index explains that the Department withheld portions of Document 045, "a 30-page Diplomatic Security Service Report of Investigation dated June 17, 2002 that is related to a suitability/misconduct investigation into allegations of harassment against Plaintiff while he was employed by the Department," because: "[D]isclosure would reveal the identities of … individuals [other than Erwin] and the information that they provided to DS agents during the conduct of this investigation, the release of which could reasonably be expected to result in harassment and intimidation without shedding light on governmental activities. Moreover release of this information would identify three individuals who expressly requested confidentiality from the DS agent when providing information in this investigation. For all these reasons, the Department properly withheld this information pursuant to … FOIA Exemptions … 7(C) and 7(D) …." Doc. 74-1 at ¶¶ 33-34.

Erwin notes that some of the withheld documents relate to the investigation of his "suitability" for employment, which he argues is a "non-law enforcement investigation" and therefore outside the scope of Exemption 7. Doc. 86 at 3. The argument fails. "Congress intended that [the statutory term] 'law enforcement purpose' be broadly construed." *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982). *Pratt* sets forth a two-part test for determining whether a document was created for a law enforcement purpose: "First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security. … Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Id*. at 420-21; *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (same). Although the basic

11

structure of the *Pratt* test still governs, Congress amended Exemption 7 in 1986, four years after *Pratt* was issued, "deleting any requirement that the information be 'investigatory,'" with the result that Exemption 7 "now applies more broadly" and extends beyond purely investigatory activities. *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002); *see also Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 184 (3d Cir. 2007) ("[A]mendments to the FOIA in 1986 modified the Exemption 7 threshold requirement by deleting the word 'investigatory' and inserting the words 'or information,' so that the protection is now available to all 'records or information compiled for law enforcement purposes.'").

The Department's background check of Erwin satisfies Exemption 7's "law enforcement purposes" requirement. "The principal purpose of a background investigation is to ensure that a prospective employee has not broken the law or engaged in other conduct making [him] ineligible for the position. The check also helps to determine whether there are any law enforcement or security issues in [his] past that could affect [his] ability … to carry out the position." *Mittleman v. Office of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (internal quotation marks and citations omitted). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope. Thus, enforcement of the law fairly includes not merely the detection and punishment of violations of law but their prevention." *Ibid*. (internal quotation marks and citations omitted).

In *Doe v. Department of Justice*, 790 F. Supp. 17 (D.D.C. 1992), the court applied these principles in holding that the background check at issue had a law enforcement purpose because it was authorized by Executive Order 10450, which provides that national security interests required government employees to be "reliable, trustworthy, of good conduct and character, and of complete and unswerving loyalty to the United States." *Id*. at 20. Suitability investigations by

12

Diplomatic Security likewise are conducted pursuant to an Executive Order providing that eligibility for access to classified information will be granted only after an investigation confirms the employee's "loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment." Exec. Order No. 12,968, 60 Fed. Reg. 40,245 (Aug. 2, 1995). Given Diplomatic Security's position as "the law enforcement arm of the Department" and its obligation to "provid[e] a safe and secure environment for the conduct of U.S. foreign policy," Doc. 74-1 at ¶ 21, documents related to the Department's background check of Erwin satisfy Exemption 7's "law enforcement purposes" requirement. *See Mittleman*, 76 F.3d at 1243 (holding that documents related to the background investigation of the FOIA requester fell within the scope of Exemption 7); *Stein*, 662 F.2d at 1261 ("The term 'intelligence' in section 552(b)(7)(D) is intended to apply to positive intelligence-gathering activities ... and background security investigations by governmental units which have authority to conduct such functions."); *see also Pratt*, 673 F.2d at 420 n.32 (same as *Stein*); *Archibald v. Dep't of Justice*, __ F. Supp. 2d __, 2013 WL 2948212, at *4 (D.D.C. June 17, 2013) ("background checks by nature implicate law enforcement interests"); *Wolk v. United States*, 2005 WL 465382, at *3 (E.D. Pa. Feb. 28, 2005) ("the 'prevailing trend' is to conclude that background checks are conducted for law enforcement purposes"); *Miller v. United States*, 630 F. Supp. 347, 349 (E.D.N.Y. 1986) (same).

Erwin also argues that Exemption 7 is inapplicable because "[n]o law enforcement action is ever, or has ever, been undertaken against Plaintiff by the [Department]." Doc. 86 at 3. The argument fails because Exemption 7 applies regardless of whether law enforcement action is taken. *See Pratt*, 673 F.2d at 421 ("Nor is it is necessary for the investigation to lead to a criminal prosecution or other enforcement proceeding in order to satisfy the 'law enforcement

purpose' criterion."); *see also Jordan v. Dep't of Justice*, 668 F.3d 1188, 1193 (10th Cir. 2011) (same); *Ortiz v. Dep't of Health and Human Servs.*, 70 F.3d 729, 733 (2d Cir. 1995) (same).

As noted above, Erwin offers no further substantive challenges to the Department's *Vaughn* index or to its invocation of Exemption 7. Having reviewed the Department's updated submissions, the court finds that the "agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) (internal quotation marks omitted).

### B. Segregability

The Department's updated *Vaughn* index outlines the information contained in each of the seventeen documents originally withheld in full, and attests that the Department "re-reviewed [those] documents … to determine if there is any reasonably segregable non-exempt information contained in the documents." Doc. 74-2 at ¶ 91. As a result of this reexamination, the Department "is in the process of releasing to Plaintiff six documents in part." *Ibid*. Among the documents being partially released are Documents P071 and P072, Doc. 74-2 at ¶¶ 84-85, which the court previously identified as "illustrative" of the Department's deficient segregability explanation. 2013 WL 842601, at *6.

For each of the eleven documents that continue to be withheld in full, the updated *Vaughn* index describes the information withheld in detail and explains with sufficient particularity why the Department withheld the entire document. Doc. 74-1 at ¶¶ 35, 40, 42-45, 47; Doc. 74-2 at ¶¶ 86-87. Given the presumption that the Department has satisfied its duty to disclose reasonably segregable information—a presumption Erwin fails to overcome—the court finds that the Department has met its obligation. *See Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir.

14

2013) ("In determining whether the FBI has met [its] obligation, it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material. … Hodge has not presented sufficient evidence to rebut that presumption.") (internal quotation marks omitted); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (noting that "government agencies need not organize their records for the purpose of FOIA compliance," and holding that "if the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not 'reasonably segregable'"); *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (holding that an agency can withhold documents based on an affidavit containing a "relatively detailed justification" for the withholding) (internal quotation marks omitted); *Doherty v. Dep't of Justice*, 775 F.2d 49, 53 (2d Cir. 1985) ("The fact that there may be some nonexempt matter in documents which are predominantly exempt does not require the district court to undertake the burdensome task of analyzing approximately 300 pages of documents, line-by-line."); *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979) (same).

## Conclusion

The Department has remedied the deficiencies identified in the court's earlier opinion and has otherwise established that the materials it is withholding have been properly withheld. Erwin's contrary arguments are without merit and, as noted above, he has forfeited any other arguments he might have pressed. And because the Department's affidavit and *Vaughn* index describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld falls logically within the claimed exemptions, and are not controverted by either contrary evidence in the record or by evidence of

bad faith, no *in camera* review is warranted. *See Silets*, 945 F.2d at 229. Accordingly, the Department's renewed motion for summary judgment is granted and Erwin's cross-motion for summary judgment is denied.

December 9, 2013

_____
United States District Judge